# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $36,800.00 IN FUNDS ON DEPOSIT IN SUNWEST
FEDERAL CREDIT UNION ACCOUNT ENDING IN 7898,
HELD IN THE NAME OF MARILYN THOMASSON

Case Number: 19-908M (NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, John Milotzky, being duly sworn depose and say:

I am a Detective and Task Force Agent assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force, and have reason to believe that in the District of Arizona there is now certain property, namely, up to $36,800.00 in funds on deposit in SunWest Federal Credit Union account ending in 7898, held in the name of Marilyn Thomasson, that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that consists of, or is traceable to, proceeds of wire fraud committed in violation of 18 U.S.C. § 1343, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Sworn to before me, and subscribed in my presence

Signature of Affiant
John Milotzky, USSS

August 22, 2019
Date and time issued

at Milwaukee, Wisconsin
City and State

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, John Milotzky, have been duly sworn on oath, state as follows:

### Affiant's Background

1.      I am a Detective with the City of Wauwatosa Police Department and have been employed with that department since 2001. I am currently assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force ("MFCTF"). I was federally deputized on June 24, 2015. My duties as a Detective and Task Force Agent with the Secret Service include investigating financial crimes, such as identity fraud, check fraud, credit card fraud, bank fraud, wire fraud, currency-counterfeiting offenses, and money laundering. During my employment with the Wauwatosa Police Department and the MFCTF, I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments.

2.      As a Detective and Task Force Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes. In the course of those investigations, I have used various investigative techniques, including conducting undercover operations, reviewing physical and electronic evidence, obtaining and reviewing financial records, and working with cooperating sources of information. In the course of those investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, ownership, and control of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

3.      Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

4.      The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained from the victim in the course of investigating this incident.

### Property Sought to be Seized

5.      I submit this affidavit in support of an application for a warrant to seize up to $36,800.00 on deposit in SunWest Federal Credit Union account ending in 7898 ("SunWest 7898"), held in the name of Marilyn Thomasson.

6.      For the reasons set forth below, I submit that up to $36,800.00 in funds on deposit in SunWest 7898 are:

   a.      Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343;

b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

## Summary of Scheme to Defraud

7. I submit that there exists probable cause to believe that up to $36,800.00 in proceeds of a wire fraud scheme – which involved material misrepresentations and the use of interstate wires in connection with a romance fraud scam – have been deposited into SunWest 7898, the account from which up to that amount of funds are sought to be seized

8. As a part of the romance fraud aspect of the fraud scheme, an unknown suspect or suspects caused $36,800.00 to be wire transferred from the victim's U.S. Bank accounts, which are located within the Eastern District of Wisconsin, to SunWest 7898, which is located outside this judicial district.

## Facts Supporting Findings of Probable Cause for Issuance of Seizure Warrant

### Common attributes of "West African" fraud schemes

9. According to a March 2013 publication of the U.S. Federal Trade Commission, consumers lose hundreds of millions of dollars annually to cross-border financial crimes. Some of the most common cross-border financial schemes originate in West African nations such as Nigeria. Law enforcement agencies therefore sometimes refer to such schemes as "West African fraud schemes."

10. One common West African fraud scheme is a romance scam, in which a fraudster uses electronic messages, sent via email or social media services, to delude the victim in the United States into believing that the victim is in a romantic relationship with the person the fraudster purports to be. The fraudster then causes the victim to wire money to an account controlled by the fraudster on false pretenses.

11. Foreign perpetrators of such scams sometimes recruit witting or unwitting persons within the United States to open bank accounts that the foreign perpetrators use to receive proceeds of the scam. The foreign perpetrators often target persons within the United States who are seeking companionship, or are otherwise mentally or emotionally vulnerable, to open such accounts at financial institutions within the United States. Sometimes those accounts are opened by a victim of a romance scam.

2

Case 2:19-mj-00908-NJ Filed 09/06/19 Page 3 of 8 Document 1

### Statement of victim T.O. regarding romance fraud scheme

12. On July 24, 2019, TFO Brian Wallander and I met with a female victim having the initials T.O. regarding a romance scam complaint.

13. T.O. resides in the city of Milwaukee, which is located within the Eastern District of Wisconsin.

14. T.O. explained that since approximately February 2019, T.O. had been in an online relationship with a person she met online through Facebook. T.O. knew this person as "Den Kaiser Rechard." Shortly after their first correspondence, T.O. and "Den Kaiser Rechard" moved their online communications from Facebook to Google Hangout.

15. T.O. stated that she had never met "Den Kaiser Rechard" in person and only corresponded electronically with "Den Kaiser Rechard." "Den Kaiser Rechard" claimed to be a Major General in the U.S. Military who also worked for the U.N. and was stationed in Afghanistan.

16. From April 5, 2019, through May 16, 2019, at the direction of the person T.O. believed to be "Den Kaiser Rechard," and potentially other involved co-actors, T.O. sent five wire transfers, totaling $36,800.00, from T.O.'s U.S. Bank accounts to SunWest 7898.

### T.O.'s April 5, 2019 wire transfer of $19,800.00 in fraud proceeds into SunWest 7898

17. T.O. provided me with documentation of a wire transfer that T.O. had completed on April 5, 2019. In that transaction, T.O. wired $19,800.00, at the direction of "Den Kaiser Rechard," from T.O.'s U.S. Bank account ending in 4294 to SunWest 7898.

18. "Den Kaiser Rechard" told T.O. that this $19,800.00 was to pay for a private helicopter to remove "Den Kaiser Rechard" from an active war zone in Afghanistan. "Den Kaiser Rechard" further stated that he was taking emergency leave from the U.N., so the military would not provide him with a helicopter.

19. On April 5, 2019, as instructed by "Den Kaiser Rechard," T.O. wire transferred $19,800.00 from T.O.'s U.S. Bank account ending in 4294 into SunWest 7898.

### T.O.'s April 11, 2019 wire transfer of $2,500.00 in fraud proceeds into SunWest 7898

20. T.O. also provided me with documentation of a wire transfer that T.O. had completed on April 11, 2019. In that transaction, T.O. wired $2,500.00, at the direction of "Den Kaiser Rechard," from T.O.'s U.S. Bank account ending in 3736 to SunWest 7898.

21. "Den Kaiser Rechard" told T.O. that "Den Kaiser Rechard" had money and gold bars in Brazil and that he needed to send a messenger to Brazil to take possession of the money and gold bars. "Den Kaiser Rechard" stated that this $2,500.00 was to pay for the messenger.

22. On April 11, 2019, as instructed by "Den Kaiser Rechard," T.O. wire transferred $2,500.00 from T.O.'s U.S. Bank account ending in 3736 into SunWest 7898.

**T.O.'s May 1, 2019 wire transfer of $2,500.00 in fraud proceeds into SunWest 7898**

23. T.O. provided me with documentation of a wire transfer that T.O. had completed on May 1, 2019. In that transaction, T.O. wired $2,500.00 – at the direction of an alleged lawyer for "Den Kaiser Rechard" – from T.O.'s U.S. Bank account ending in 4294 to SunWest 7898.

24. A person claiming to be a lawyer for "Den Kaiser Rechard" contacted T.O. and told T.O. that after leaving Afghanistan, "Den Kaiser Rechard" had gone to Brazil to take possession of his money and gold bars. The alleged lawyer stated that "Den Kaiser Rechard" had been arrested by Brazilian authorities at the airport for possessing the money and gold bars and that "Den Kaiser Rechard" was now in a Brazilian jail. The alleged lawyer instructed T.O. to wire the $2,500.00 to pay "Den Kaiser Rechard's" bail.

25. On May 1, 2019, as instructed by the alleged lawyer for "Den Kaiser Rechard," T.O. wire transferred $2,500.00 from T.O.'s U.S. Bank account ending in 4294 into SunWest 7898.

**T.O.'s May 9, 2019 wire transfer of $3,500.00 in fraud proceeds into SunWest 7898**

26. T.O. also provided me with documentation of a wire transfer that T.O. had completed on May 9, 2019. In that transaction, T.O. wired $3,500.00 – at the direction of an alleged lawyer for "Den Kaiser Rechard" – from T.O.'s U.S. Bank account ending in 4294 to SunWest 7898.

27. A person claiming to be a lawyer for "Den Kaiser Rechard" again contacted T.O. and told T.O. that "Den Kaiser Rechard" needed money for a flight from Brazil to the United States. The alleged lawyer instructed T.O. to wire the $3,500.00 for the flight and gave T.O. flight information.

28. On May 9, 2019, as instructed by the alleged lawyer for "Den Kaiser Rechard," T.O. wire transferred $3,500.00 from T.O.'s U.S. Bank account ending in 4294 into SunWest 7898.

29. T.O. traveled to O'Hare Airport in Illinois, expecting to meet "Den Kaiser Rechard." When T.O. arrived at O'Hare Airport, T.O. discovered that no flight having the flight number the lawyer had provided even existed.

**T.O.'s May 16, 2019 wire transfer of $8,500.00 in fraud proceeds into SunWest 7898**

30. T.O. also provided me with documentation of a wire transfer that T.O. had completed on May 16, 2019. In that transaction, T.O. wired $8,500.00 – at the direction of an alleged lawyer for "Den Kaiser Rechard" – from T.O.'s U.S. Bank account ending in 4294 to SunWest 7898.

4

31. A person claiming to be a lawyer for "Den Kaiser Rechard" again contacted T.O. and told T.O. that "Den Kaiser Rechard" had attempted to fly to the United States, but that the U.N. had found out about "Den Kaiser Rechard's" trip and had arrested "Den Kaiser Rechard." The alleged lawyer stated that "Den Kaiser Rechard" was now imprisoned in London. The alleged lawyer instructed T.O. to wire the $8,500.00 to pay "Den Kaiser Rechard's" bail.

32. On May 16, 2019, as instructed by the alleged lawyer for "Den Kaiser Rechard," T.O. wire transferred $8,500.00 from T.O.'s U.S. Bank account ending in 4294 into SunWest 7898.

33. T.O. was deceived and would not have otherwise made the five wire transfers totaling $36,800.00 into SunWest 7898 if T.O. had not been deceived on false and fraudulent pretenses by the persons T.O. believed to be "Den Kaiser Rechard" and the alleged lawyer for "Den Kaiser Rechard."

34. To fund these five wire transfers, T.O. has lost a significant amount of T.O.'s retirement savings.

35. "Den Kaiser Rechard" told T.O. that T.O. would be given access to the money and gold bars. "Den Kaiser Rechard" provided T.O. with an internet link to a spoofed website made to look like a Barclays Bank account page. That page showed a balance of $948,000.00 and had T.O.'s information as the account holder. T.O. stated that T.O. could not access the funds unless she provided an additional $17,500.00 to the "Financial Ministry" in Brazil. Law enforcement became involved before T.O. had sent more money.

36. As of August 22, 2019, T.O. has not received money back from the romance fraud scam.

37. I conducted a search on IC3.gov and found a complaint made on March 3, 2019, by victim J.E. in Dallas, Texas. J.E. reported that J.E. had lost $64,567.00 as a result of an online romance scam. As part of that scam, J.E. had completed four wire transfers totaling $38,382.00 into the SunWest 7898.

38. I contacted SunWest Federal Credit Union and received confirmation that Marilyn Thomasson was the account holder of SunWest 7898 and that Thomasson had been wiring funds to Nigeria.

39. SunWest Federal Credit Union advised me that they have restricted Marilyn Thomasson's access to SunWest 7898 and that there were funds remaining in the account.

40. I therefore submit that there exists probable cause to believe that a total of $36,800.00 that "Den Kaiser Rechard," and the alleged lawyer for "Den Kaiser Rechard," had caused T.O. to wire from her U.S. Bank accounts into SunWest 7898 from April 5, 2019, through May 16, 2019, consisted of proceeds of a romance fraud scam and, therefore, that up to $36,800.00 in funds on deposit in SunWest 7898 therefore represent proceeds of this fraud

5

scheme and are subject to seizure and forfeiture under both the civil and criminal asset forfeiture statutes.

## Applicable Money Laundering and Asset Forfeiture Provisions

41. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

42. Section 984 (a) provides in part:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

43. 18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

44. Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

45. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture.

6

## Conclusion

46. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $36,800.00 in funds on deposit in SunWest Federal Credit Union account ending in 7898, held in the name of Marilyn Thomasson, are:

    a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses, committed in violation of 18 U.S.C. § 1343;

    b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

    c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

    d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

### # # #

7
Case 2:19-mj-00908-NJ   Filed 09/06/19   Page 8 of 8   Document 1